25CA2074 Yates v Block 08-06-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2074
City and County of Denver District Court No. 17CV31274
Honorable Mark T. Bailey, Judge

Kelsy M. Yates,

Plaintiff-Appellee,

v.

Richard A. Block and Andrea A. Block,

Defendants-Appellants.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

Griffiths Law PC, Duncan L. Griffiths, Kimberly A. Newton, Cheyenne Somers,
Lone Tree, Colorado, for Plaintiff-Appellee

Richard A. Block, Pro Se

Andrea A. Block, Pro Se

¶ 1     Defendants, Richard A. Block and Andrea A. Block (the Blocks), appeal multiple orders from the district court relating to a receivership action.  We affirm.

## I.     Background

¶ 2     The litigation surrounding this appeal is nearly a decade old and started when plaintiff, Kelsy M. Yates, filed a petition to dissolve her marriage to her former spouse.  In 2016, the court overseeing the divorce proceedings appointed Sterling Consulting Corporation (Sterling) as receiver to manage and protect various businesses that were part of the marital estate.  As Sterling's president, Richard Block signed and filed an oath of receiver.

¶ 3     The court lost faith in Sterling and appointed Gary Schwartz as receiver.  The court didn't "formally discharge Sterling . . . from its role as receiver," ordering it instead to cooperate with Schwartz.  The court also ordered that Sterling and its staff remained subject to the court's jurisdiction.

¶ 4     Schwartz investigated Sterling's handling of the receivership and issued a report, alleging that Sterling and the Blocks had breached their fiduciary duties and caused financial detriment to the receivership estate.

1

¶ 5 In July 2023, Sterling entered into a settlement agreement with Yates, Yates's former spouse, and Schwartz to resolve claims against Sterling arising out of Sterling's receivership (Settlement Agreement). Per the Settlement Agreement, Sterling agreed to pay $100,000 to resolve potential claims made against the company. Sterling's representatives signed the Settlement Agreement on behalf of Sterling and its affiliates.

¶ 6 Although Sterling later reversed course and opposed the court's approval of the Settlement Agreement, the court approved it in October 2023. After Sterling failed to comply with the Settlement Agreement's terms, the court granted Schwartz's motion to enforce it. Sterling failed to satisfy the judgment and instead initiated a bankruptcy proceeding in the Southern District of Florida, which was ultimately dismissed.

¶ 7 In 2024, the court granted Schwartz's motion to assign the claims arising from the Settlement Agreement to Yates. The court then approved Schwartz's final report and discharged him from his receivership duties. Schwartz assigned the claims to Yates, and Yates filed a complaint against Sterling and the Blocks, asserting several claims, including unjust enrichment, civil theft, and

2

violation of the Colorado Uniform Fraudulent Transfer Act. Yates struggled to serve the Blocks, but Sterling and the Blocks continued to make filings in this action.

¶ 8 Yates was able to serve the Blocks in December 2024, and they unsuccessfully attempted to remove to the case to the United States District Court for the District of Colorado. The Blocks didn't file an answer or otherwise respond to Yates's complaint. The court gave the Blocks an opportunity to respond, ordered them to schedule a hearing, and ordered them to show cause why default shouldn't enter for their failure to plead or otherwise defend the complaint. After the Blocks failed to comply with the scheduling order or file an answer, the court entered default and awarded Yates $100,000 under the Settlement Agreement plus attorney fees and costs. The court granted Yates's motion for default judgment. Instead of moving to set aside the default judgment, the Blocks filed a notice of appeal.

## II. Analysis

¶ 9 Although the Blocks raise several issues, we discern four. The Blocks claim that (1) the district court erred by entering default judgment; (2) the receivership action terminated when Schwartz

3

was discharged; (3) the Settlement Agreement was improper because it was approved without a hearing; and (4) their rights were violated both when the district court judge didn't recuse himself and when they were denied access to the court's electronic filing system. We address and reject each argument in turn.

## A. Initial Issues

¶ 10 Before we consider the Blocks' claims, we address two preliminary issues — the Blocks' self-represented status and their steadfast, but mistaken, argument that the district court lacks personal jurisdiction over them.

### 1. Self-Represented Appeals

¶ 11 Although the Blocks are self-represented and we liberally construe a self-represented party's pleadings, they must still adhere to the rules of procedure, including the appellate rules. *See Adams v. Sagee*, 2017 COA 133, ¶ 10. The Blocks' disregard of the appellate rules is so blatant that we would be justified in striking their briefs under C.A.R. 38(a) for failure to comply with C.A.R. 28 because they don't present a statement of issues to review, cite the record, or cite authority in support of several of their arguments. Because we're aware of the difficulties that self-represented litigants

encounter, however, we exercise our discretion to consider the appeal and broadly construe their pleadings. *See Jones v. Williams*, 2019 CO 61, ¶ 5 ("Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer.").

### 2. The District Court Had Personal Jurisdiction Over the Blocks

¶ 12 The Blocks argue that the district court didn't have personal jurisdiction over them because they aren't domiciled in Colorado. In support, they quote *In re Marriage of Green*, 2024 CO 24, ¶ 1, for the proposition that "for a court to exercise general personal jurisdiction over an individual, the individual must be domiciled within the state." But the issue in *Green* was how to determine personal jurisdiction in a dissolution of marriage proceeding when the parties were domiciled in different states and each party could argue lack of general personal jurisdiction if the proceeding was filed in the state in which the other party was domiciled. That's distinguishable from the case here, which involves a receivership dispute that originated in Colorado between Yates, the Blocks, and Sterling — a Colorado corporation.

¶ 13    Whether a court may exercise personal jurisdiction over a nonresident is a question of law that we review de novo. *Align Corp. v. Boustred*, 2017 CO 103, ¶ 8. Personal jurisdiction exists over a nonresident defendant if Colorado's long-arm statute and constitutional due process requirements are satisfied. § 13-1-124, C.R.S. 2025; *Griffith v. SSC Pueblo Belmont Operating Co.*, 2016 CO 60M, ¶ 18. A court has *general* jurisdiction over the defendant if the defendant conducted continuous and systematic activities that are of a general business nature in the forum state. *Giduck v. Niblett*, 2014 COA 86, ¶ 16. "A court has *specific* jurisdiction if the 'injuries triggering litigation arise out of and are related to activities that are significant and purposefully directed by the defendant at residents of the forum.'" *Id.* (emphasis added) (citation omitted).

¶ 14    Although the Blocks moved from Colorado to Florida during the proceedings, the district court properly exercised personal jurisdiction over them (both general and specific) on several independent grounds. First, Sterling is a Colorado corporation, and the Blocks are Sterling's officers. Richard Block was president and fifty percent owner, and Andrea Block also owned part of Sterling and served as its vice president, officer, and authorized

6

representative. By signing and filing the oath of receiver, Richard Block consented to the district court's exercise of jurisdiction and to "fully and faithfully exercise all powers and discharges under the Order Appointing Receiver in this case and any subsequent Directives of this Court."

¶ 15 Second, when the court appointed Schwartz as receiver, it expressly indicated that Sterling "and its staff," which included the Blocks, "remain subject to the jurisdiction of this Court until formally discharged."

¶ 16 Finally, the Blocks independently consented to the district court's jurisdiction through the Settlement Agreement. The agreement binds not only the named parties but also their affiliates, and the Blocks, acting as Sterling's representatives and principals, fall within that provision.

¶ 17 Based on the record, not only did the Blocks consent to jurisdiction, but they also purposefully availed themselves of the privilege of conducting business in Colorado. Likewise, Yates's injuries arose out of and were related to the receivership to which Sterling was appointed. Accordingly, the district court had jurisdiction over them.

## B.    The Default Judgment

¶ 18     The Blocks argue that the court improperly entered default judgment.  We conclude that the Blocks didn't preserve this issue for appellate review, and we decline to address it.

¶ 19     Although appellate courts have jurisdiction over a direct appeal of a default judgment, the normal rules of preservation still apply.  *Gestner v. Gestner*, 2024 COA 55, ¶ 2.  The typical course for challenging a default judgment based on a failure to respond to the complaint is to move to set aside the default judgment in the district court, and then, if the motion is denied, to appeal that denial.  *See* C.R.C.P. 55(c); C.R.C.P. 60(b); *McMichael v. Encompass PAHS Rehab. Hosp., LLC*, 2023 CO 2, ¶ 10; *Sebastian v. Douglas County*, 2016 CO 13, ¶¶ 2, 18.  Without filing such a motion, it's unlikely that the district court will have had the opportunity to rule on — or even consider — a challenge to the default judgment.  *Gestner*, ¶ 19.  Thus, when a party hasn't appeared or presented arguments before the district court enters a default judgment, the party's challenges to the default judgment won't be reviewable on the merits — in other words, while we have jurisdiction over such an appeal, an appellant's failure to develop the record or preserve

8

any arguments in the district court will almost invariably prevent appellate review of the issues raised on appeal. *Id.* at ¶ 20.

¶ 20 The Blocks never moved to set aside default judgment under C.R.C.P. 55(c) or sought relief from the judgment under C.R.C.P. 60(b). As a result, the district court didn't have the opportunity to consider whether relief from the default judgment was warranted or to make findings on that issue. Thus, any challenge to the default judgment was unpreserved, and we don't consider it on appeal. *Gestner*, ¶ 18 ("In civil cases, issues not raised in or decided by the district court generally will not be addressed for the first time on appeal.").

### C. The Receivership Didn't Terminate When Schwartz Was Discharged

¶ 21 To the extent that the Blocks challenge Schwartz's discharge as a receiver, we disagree with Yates's claim that their appeal is untimely. An order discharging a receiver constitutes a final judgment, *Four Strong Winds, Inc. v. Lyngholm*, 826 P.2d 414, 417 (Colo. App. 1992), and is appealable either as an interlocutory matter or upon the entry of a final judgment. *See* C.A.R. 1(a)(4) ("an order appointing or denying the appointment of, or sustaining or

overruling a motion to discharge, a receiver" is immediately appealable); *cf. Francis v. Camel Point Ranch, Inc.*, 2019 COA 108M, ¶ 12 ("If an interlocutory appeal is not taken from an order appointing a receiver, a party may still appeal the subject matter of the interlocutory order upon the entry of a final judgment." (citation omitted)). Schwartz was discharged on October 14, 2024, but the Blocks didn't file their notice of appeal until October 27, 2025.

¶ 22     Timeliness isn't a concern, though, because the Blocks aren't challenging the actual order discharging Schwartz as a receiver. Instead, they claim that when the court discharged Schwartz as the receiver, the receivership action was dismissed, which precluded Yates from asserting claims against Sterling and the Blocks. According to the Blocks, when a receiver has been discharged, "his liability and responsibility as a receiver as to that property ceases," so Yates couldn't assume Schwartz's responsibilities as a receiver because that would violate court orders and receivership law.

¶ 23     The Blocks are mistaken. They conflate the discharge of a fiduciary with dismissal of the action, but "supervision and disposition of the receivership estate lie within the trial court's jurisdiction . . . , [and] the court has the duty to resolve disputed

10

issues of law and fact pertaining to the receivership." *Midland Bank v. Galley Co.*, 971 P.2d 273, 276-77 (Colo. App. 1998). Schwartz's discharge released him from ongoing receivership duties and liabilities, but it didn't terminate or dismiss the receivership action. *See* C.R.C.P. 66(c) ("An action in which a receiver has been appointed shall not be dismissed except by order of the court."). Also, the Blocks don't explain how Schwartz's discharge relieved them of their independent obligations when the court clarified that it wasn't discharging Sterling from its receivership role and that Sterling and its staff remained subject to the court's jurisdiction until formally discharged. *See Midland Bank*, 971 P.2d at 276 ("The court retains jurisdiction over the receiver until the order discharging the receiver is entered.").

¶ 24    Likewise, the Blocks don't address Schwartz's assignment of the receivership's remaining claims to Yates, which the district court approved and to which the Blocks didn't object. Further, any claim based on a receiver's alleged breach of a fiduciary duty should be asserted in the receivership proceedings rather than a separate lawsuit. *Four Strong Winds*, 826 P.2d at 417 (the proper mechanism for asserting such claims is through the receivership

action itself).  Thus, Yates properly asserted her claims against Sterling and the Blocks in the receivership action.

¶ 25    In sum, contrary to what the Blocks argue, the receivership action didn't terminate when the court discharged Schwartz.  And Yates wasn't prevented from pursuing her claims against Sterling and the Blocks because Sterling was never discharged and the court retained jurisdiction over Sterling and the Blocks.

### D.    The Settlement Agreement Was Properly Approved

¶ 26    The Blocks argue that the Settlement Agreement was improper because the district court approved it without a hearing.  Yates argues that the Blocks didn't preserve this issue because they were not yet parties to the case when the court issued its order approving the Settlement Agreement and that, even if it is preserved, they lack standing to challenge the Settlement Agreement for the same reason.  We agree that the argument was unpreserved and decline to consider it.  *See Marquez v. Schaefer*, 2025 COA 44, ¶ 54 (declining to address argument raised for the first time on appeal).

### E.    The Blocks' Remaining Claims

¶ 27    The Blocks argue that Judge Bailey should have recused himself because he was biased and that their constitutional rights

were violated because they were unable to access the court's electronic filing system. We disagree with both assertions.

### 1. Bias

¶ 28 The Blocks claim that Judge Bailey was biased and should've recused himself because he previously worked for the Colorado Attorney General's Office, which intervened in the receivership action and "has been completely adverse to Sterling."

¶ 29 The supreme court has held that a judge's prior employment with a governmental office doesn't automatically require the judge's disqualification. *People v. Julien*, 47 P.3d 1194, 1195 (Colo. 2002) (trial court judge's prior employment as a district attorney didn't automatically require the judge to recuse himself from criminal matters when the judge took no part in, nor did he supervise anyone participating in, the investigation, preparation, or presentation of the underlying case).

¶ 30 Here, the Blocks allege only that Judge Bailey should've recused himself because his prior employment status creates a conflict of interest, but they offer no evidence of bias. And an allegation of bias based solely on the judge's prior governmental association, without more, doesn't warrant recusal. *Id.* at 1197;

13

*Sanders v. People*, 2024 CO 33, ¶ 30 ("[R]ecusal is warranted when the probability of actual bias is sufficiently high so as to undermine the right to a fair trial."). Further, unless a "reasonable person could infer that the judge would in all probability be prejudiced against [a party], the judge's duty is to sit on the case." *In re People in Interest of A.P.*, 2022 CO 24, ¶ 25 (citation omitted).

### 2. E-Filing System

¶ 31     The Blocks argue that their rights were violated because they don't have the same electronic or digital access to court records that parties represented by counsel enjoy. We disagree.

¶ 32     Courts have held that pro se parties don't have a constitutional right to access case files electronically if they can access their files by other means. *See Reinhardt v. Hopps*, 590 F. App'x 755, 758 (10th Cir. 2014) (the plaintiff wasn't denied access to the courts by not being able to e-file because "she was not deprived of the ability to be heard, but instead was able to access the district court through alternative means, including mail and personal delivery"); *Blackston v. Alabama*, 188 F. App'x 803, 806-07 (11th Cir. 2006) (per curiam) (rejecting pro se plaintiffs' arguments

14

that the district court violated their rights to due process and access to the courts by denying their request to e-file documents).

¶ 33 The Blocks haven't shown that they were prejudiced by their inability to file or access filings electronically, and they haven't pointed to a specific order or ruling that they were unable to obtain. Moreover, based on the record, it appears that Sterling and the Blocks were able to electronically access the district court file as set forth in Chief Justice Directive 05-01, Access to Court Records (effective Nov. 10, 2025). Likewise, we issued an order allowing the Blocks to opt into electronic delivery of the appellate record. And although the Blocks don't have access to the E-Filing System, the record also shows that they've been emailed court filings. *See, e.g.*, C.A.R. 25(d) (any party, including self-represented litigants, may serve and receive filings by email in the appellate courts).

### F. Appellate Attorney Fees

¶ 34 Yates requests an award of attorney fees under section 18-4-405, C.R.S. 2025, for successfully defending the appeal. The district court awarded Yates attorney fees against the Blocks, jointly and severally, pursuant to section 18-4-405 and the Settlement Agreement. We exercise our discretion under C.A.R. 39.1 and

15

remand to the district court to determine whether Yates is entitled to attorney fees incurred on appeal and, if so, the reasonable amount.

## III. Disposition

¶ 35    We affirm the judgment and remand to the district court to determine appropriate attorney fees on appeal.

JUDGE PAWAR and JUDGE SULLIVAN concur.